## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-01298-SCT

*BENNIE OVERSTREET a/k/a BENNIE LOPER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/20/1999 |
| TRIAL JUDGE: | HON. MARCUS GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  BILLY L. GORE |
| DISTRICT ATTORNEY: | KEN TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 6/07/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/28/2001 |

### EN BANC.

### DIAZ, JUSTICE, FOR THE COURT:

¶1. Bennie Overstreet appeals his convictions in the Circuit Court of Neshoba County following a trial by a jury conducted July 14, 1999. Overstreet was convicted of selling less than an ounce of marijuana under Count I of the indictment and of selling cocaine under Count II. He was sentenced to serve two years on Count I and fifteen years on Count II, the former to run consecutively with the latter, and fined $5,000. Overstreet is an indigent, and his appeal to this Court calls our attention to the much-maligned legacy of *[Gideon v. Wainwright](#)*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and its most recent offspring, *[Hughes v. Booker](#)*, 220 F.3d 346 (5th Cir. 2000).

### FACTS

¶2. On June 4, 1998, an undercover operation was being conducted in Neshoba County by the Mississippi Bureau of Narcotics in an effort to stop the flow of illegal drugs through the streets of Philadelphia. Mississippi Bureau of Narcotics Agent Marcus Bass acted as an undercover agent working in conjunction with a confidential informant known as Charles Wash.

¶3. After traveling to several houses in search of drugs in the Evergreen Avenue area, Agent Bass and Wash were directed to a trailer adjacent to a yellow house near the end of the street. When they arrived, a group of people were milling around in front of the trailer, Overstreet among them. Wash got out of the car and approached Overstreet. The two men had a brief conversation during which Wash asked where he could buy marijuana. Overstreet said he could procure the marijuana and instructed them to wait in front of the yellow house.

¶4. Approximately five minutes later, Overstreet returned and got into the car with Agent Bass while Wash talked with an acquaintance on the porch of the yellow house. Agent Bass gave Overstreet twenty dollars in exchange for 4.5 grams[1] of marijuana wrapped in a white paper towel. Immediately thereafter, Agent Bass inquired about the availability of cocaine. Overstreet assured Agent Bass that he would get some cocaine and return in short order. Overstreet exited the car, walked back to the trailer, and returned to the car with 1.35 grams of cocaine wrapped in a white paper towel which he sold to Agent Bass for one hundred dollars.

¶5. Because Agent Bass and Wash were acting undercover, Overstreet was not immediately arrested. Some six months later, a warrant was issued for Bennie Loper, Overstreet's alias, and Overstreet voluntarily surrendered to the local authorities. After a trial on the merits, a jury of his peers found him guilty. Aggrieved, he perfected his appeal to this Court.

¶6. Edmund J. Phillips, Jr., Overstreet's attorney, filed a brief with this Court which contained the following paragraph as its sum total argument:

> Except for patently unsupportable **_Batson_** objections overruled, the record in this case is almost devoid of objection by appellant overruled, motion by appellant denied and objection by appellee sustained. Counsel for appellant regards the appeal without merit. He certifies that he will on March 27, 2000, forward, postage prepaid, a copy of this memorandum to appellant and moves that appellant be allowed twenty-five days to file such comment or raise such points as he may desire, per **_Killingsworth v. State_**, 490 So. 2d 849, 852 (Miss. 1986).

¶7. The State, in response, submitted a brief which simply stated that it concurred with Phillips's conclusion that the appeal was devoid of merit. Phillips then filed a reply brief in which he noted the following procedural flaw:

> Appellant would show that the Brief for the Appellee was filed without permitting Appellant twenty-five days to file such comment or raise such points as he may desire per **_Killingsworth v. State_**, 490 So. 2d 849, 852 (Miss. 1986). By letter to the Appellant dated May 1, 2000, Appellant's counsel will again suggest to Appellant that he immediately file such matter or comment or raise such points as he deems appropriate.

The record reflects that Overstreet never filed a supplemental _pro se_ brief.

## DISCUSSION

¶8. This Court has addressed the procedure an attorney must follow to withdraw from representation when he feels his client's appeal is meritless. In **_Killingsworth v. State,_** 490 So. 2d 849, 851 (Miss. 1986), this Court instructed that if an attorney believed an appeal was without merit, he may so state to the Court. In order to fully protect the rights of the accused, the attorney must provide the defendant with a copy of the representation counsel has made to the Court and then furnish the defendant a reasonable opportunity to file his own comments and raise any additional points that he chooses. In doing so, our Constitutional obligation which guarantees to an accused "a right to be heard by himself or counsel, or both," is fulfilled. **_Id._**

¶9. This procedure was cited with approval in **_Leflore v. State,_** 535 So.2d 68, 70 (Miss. 1988), when the defendant insisted upon perfecting an appeal his attorney deemed meritless. Leflore's attorney attempted to follow the newly minted procedure announced in **_Killingsworth_**, by filing the appeal, briefing one

assignment of error, and asking for an extension of time in order to allow Leflore to read the brief and file any additional points he wished to raise. In discussing the propriety of the actions taken by Leflore's attorney, this Court noted the following:

> The procedure followed here by Leflore's attorney tracks the procedure we contemplated in *Killingsworth*, 490 So. 2d at 852. We commend the attorney's conscientious and diligent protection of the rights of his client. The attorney has, at the same time, fulfilled his obligation of fidelity to this Court by stating, with honor, his belief that this appeal is without merit except as to the first assignment of error, "the verdict of the jury was against the overwhelming weight of the evidence," which he did brief and argue. See *Killingsworth*, 490 So. 2d at 851. We write today to point out that this is the correct implementation of the procedure we contemplated in *Killingsworth*, even though the attorney/client obligations and relationships were materially different here from those in *Killingsworth*.

*Leflore*, 535 So.2d at 70.

¶10. Mississippi's *Killingsworth* procedure has been called into question by the Fifth Circuit in *Hughes v. Booker,* 220 F.3d 346 (5th Cir. 2000). The *Hughes* decision arose from Simeon Hughes's conviction of armed robbery and sentence of thirty-four years in the custody of the Mississippi Department of Corrections. *Id.* at 348. Hughes's appointed counsel complied with the *Killingsworth* procedure in filing the skeleton brief with this Court, which referred it to the Mississippi Court of Appeals. *Id.* at 348. Hughes did not file any additional briefs or papers pro se. *Id.* at 348. The Mississippi Court of Appeals declined to conduct an independent review of the record and affirmed the conviction. *Id.* at 348. Soon thereafter, Hughes filed for post-conviction relief which was denied. *Id.* at 348.

¶11. Hughes then shifted gears and entered the federal system, filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging that he had received ineffective assistance of appellate counsel because his attorney filed a brief raising no specific reversible issues and failed to object to a defective indictment. *Id.* at 348. The district court announced that it would grant the petition unless the State agreed to grant Hughes an out-of-time direct appeal with the assistance of competent counsel. *Id.* at 348. The State declined this invitation, the district court granted the petition, and the State appealed. *Id.* at 348.

¶12. The Fifth Circuit affirmed and began its analysis of Hughes's claim by reviewing *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L. Ed. 2d 493 (1967). The *Anders* procedure is among the earliest in the federal system that offers guidelines safeguarding a defendant's right to counsel when his current counsel feels the appeal is frivolous. It provides as follows:

> That request [to withdraw as counsel of record] must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court--not counsel--then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*Anders v. California*, 386 U.S. at 744, 87 S.Ct. at 1400. *Hughes* questioned whether the procedure

announced in *Killingsworth* and subsequently followed in *Leflore* is based upon an unreasonable application of the law as announced in the later case of *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed. 2d 300 (1988).

¶13. *Hughes* cited *Penson*, which relied heavily on *Anders*, as authority to hold that the *Killingsworth* procedure served to deprive Hughes of his constitutional right to effective assistance of appellate advocacy. *Hughes*, 220 F.3d at 352. In *Penson*, the U.S. Supreme Court stated that where the attorney's performance constituted a complete, actual, or constructive denial of the assistance of counsel, prejudice is presumed. *Penson v. Ohio*, 488 U.S. at 88. The Fifth Circuit found that the *Killingsworth* procedure followed by Hughes's attorney was the "functional equivalent to withdrawing from representation without complying with the requirements of *Anders*." *Hughes*, 220 F.3d at 349.

¶14. The U.S. Supreme Court recently held that the *Anders* procedure was not an independent constitutional command, but rather a prophylactic framework. *Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 747, 145 L.Ed.2d 756 (2000)(citing *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)). The Court explained its position by saying:

> We then concluded by explaining how this procedure would be better than the California one that we had found deficient. Among other things, we thought that it would "induce the court to pursue all the more vigorously its own review because of the ready references not only to the record but also to the legal authorities as furnished it by counsel." *Id.*, at 745, 87 S.Ct. 1396.

> The Ninth Circuit ruled that this final section of *Anders*, even though unnecessary to our holding in that case, was obligatory upon the States. We disagree. We have never so held; we read our precedents to suggest otherwise; and the Ninth Circuit's view runs contrary to our established practice of permitting the States, within the broad bounds of the Constitution, to experiment with solutions to difficult questions of policy. . . .

> * * * * * *

> Finally, any view of the procedure we described in the last section of *Anders* that converted it from a suggestion into a straitjacket would contravene our established practice, rooted in federalism, of allowing the States wide discretion, subject to the minimum requirements of the Fourteenth Amendment, to experiment with solutions to difficult problems of policy. . .

*Smith v. Robbins*, 528 U.S. at 271-74, 120 S.Ct. at 756-58.

¶15. Realizing that this language set the *Killingsworth* procedure free from the boundaries established by *Anders* and followed in *Penson*, the Fifth Circuit honed in on the operative language in *Robbins* that forms the minimum standard by which all state procedures are analyzed. Regarding the procedure Hughes's counsel followed, the Fifth Circuit noted that

> [I]f Hughes's counsel followed a procedure that "afford[ed] adequate and effective appellate review to indigent defendants" and therefore "reasonably ensure[d] that an indigent's appeal [would] be resolved in a way that [was] related to the merit of that appeal," *Robbins*, --- U.S. at ----, 120 S.Ct. at 758, he was not constructively denied appellate counsel. In contrast, if counsel followed a procedure that does not meet this standard, then the defendant was constructively denied counsel, and prejudice should be presumed.

*Hughes*, 220 F.3d at 349. The *Hughes* court concluded that the *Killingsworth* procedure failed to adequately safeguard the defendant's right to appellate counsel as described in *Robbins*. In support of its position the federal appellate court reasoned that while the U.S. Supreme Court has no bright line test for determining the adequacy of each individual state's procedure, it has made clear that certain safeguards are required to protect the defendant's rights. *Id.* at 350.

¶16. As an example of a properly drafted "safeguard" procedure, the *Hughes* court compared the law in California known as the "*Wende*" procedure, which was the subject of the *Robbins* decision, to Mississippi's *Killingsworth* procedure. The *Wende* procedure requires that counsel make an explicit threshold finding that the appeal would be frivolous. Then counsel files a brief with the court that outlines the facts and procedural posture. Counsel must attest that he has reviewed the record, explained his position to his client, provided the client with a copy of the brief, and informed the client of his right to file a pro se supplemental brief. Additionally, counsel asks the appellate court to do an independent review of the entire record. At no point does counsel state he feels the appeal is frivolous nor does he request to withdraw as counsel. He simply tells the court that if it finds anything that needs to be briefed, he is happy to do it. The appellate court then reviews the entire record and if it finds the appeal frivolous, it will affirm. If however, the appellate court notices plain error or requests that a point be briefed, it orders the counselor to brief that point. *See generally **People v. Wende,** 600 P.2d 1071 (Cal. 1979).*

¶17. In finding specific fault with Mississippi's procedure, the court seemed most concerned with the fact that, unlike *Wende*, under *Killingsworth*, the defendant is guaranteed only one review of his record, i.e., the first review by his attorney, instead of the more favored multi-tier review. *Hughes*, 220 F.3d at 351. A host of U.S. Supreme Court cases conclude that some form of multi-tier review is essential to guaranteeing a defendant's right to effective assistance from appellate counsel. *See **Robbins**,* 120 S.Ct. at 752 (recognizing that under the *Wende* procedure, "[t]he appellate court, upon receiving a '*Wende* brief,' must 'conduct a review of the entire record,' regardless of whether the defendant has filed a pro se brief"); *Penson,* 488 U.S. at 82-83 (holding that the state Court of Appeals should not have acted on the motion to withdraw before it made its own examination of the record to determine whether counsel's evaluation of the case was sound); *Anders*, 386 U.S. at 744 (holding that after a copy of counsel's brief is furnished to the indigent and time allowed him to raise any points that he chooses, the court then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous). As the *Hughes* court pointed out, the United States Supreme Court has recognized the importance of a procedure for withdrawal of counsel that affords an indigent defendant more than one level of review of the record to determine whether any appellate issues have merit. *Hughes*, 220 F.3d at 351.

¶18. Beyond this, the *Hughes* court also found, relying on *Penson*, that allowing defendant's counsel to simply file a brief stating that he could find no reversible error was equivalent to withdrawing from representation without complying with the minimum guidelines established by *Anders*. In *Penson*, regarding the timeline for withdrawal of appellate counsel, the U.S. Supreme Court stated:

> [T]he [Ohio State] Court of Appeals should not have acted on the motion to withdraw before it made its own examination of the record to determine whether counsel's evaluation of the case was sound [footnote omitted]. This requirement was plainly stated in *Ellis v. United States*, 356 U.S. 674, 675, 78 S.Ct. 974, 975-76, 2 L.Ed.2d 1060 (1958), it was repeated in *Anders*, 386 U.S., at 744, 87 S.Ct., at 1400, and it was reiterated last Term in *McCoy*, 486 U.S., at 442, 108 S.Ct., at 1903-

1904.

*Penson*, 488 U.S. at 82-83, 109 S.Ct. at 351.

¶19. In light of these additional nuances governing the minimum standards that must be met regarding indigent appellate advocacy, the concerns raised in *Hughes* about the effectiveness of such advocacy under the *Killingsworth* procedure were duly noted. This Court adopted the following procedures in lieu of *Killingsworth* after considering the merits of the various aforementioned procedures considered and approved by the United States Supreme Court:

> The appellate counsel must: (1) determine that the defendant was unlikely to prevail on appeal; (2) file a brief indicating that he scoured the record thoroughly and referred to anything in the record that might arguably support the appeal, and; (3) advise his client of his right to file a pro se supplemental brief. At this point, the appellate court shall then make its own examination of the record . . . .

*Turner v. State*, No. 1999-KA-00411-SCT (¶ 11) (Miss. June 7, 2001)(citations omitted). These additional safeguards address the primary concern raised in *Hughes*: the unwavering concern that all persons receive equal justice under the law irrespective of their socio-economic status.

¶20. Edmund Phillips, Overstreet's attorney on appeal, followed the dictates of *Turner* in preserving Overstreet's opportunity to appeal his convictions. Phillips stated clearly that he did not feel that any reversible error at trial occurred and thought an appeal would be frivolous. However, at his client's insistence, Phillips filed the brief and asked for twenty-five days for his client to respond with additional allegations of error. Once the State filed its brief, Phillips went one step further by filing a reply brief asking this Court to note that the State only gave Overstreet fourteen days to supplement Phillips's skeleton brief, and not the requested twenty-five days. Overstreet never filed any pro se papers in support of his appeal.

## BATSON CHALLENGES

¶21. Overstreet's attorney noted that several objections made and overruled by the trial court regarding *Batson* challenges were the only potential basis for appeal. The standard of review regarding the improper use of peremptory challenges to exclude potential black jurors from the jury is well settled. This Court has stated:

> *Batson* requires a defendant, in order to make out a prima facie case of purposeful discrimination in the selection of a petit jury, to establish: (1) that he is a member of a cognizable racial group; (2) that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race; (3) that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Sudduth v. State*, 562 So.2d 67, 70 (Miss. 1990) (citing *Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 90 L. Ed. 2d 69 (1986)). Once a prima facie case of discrimination has been made, the State must come forward with race neutral explanations for challenging potential black jurors. *Batson*, 476 U.S. at 97. The trial judge then decides whether the defendant established purposeful discrimination in the State's exercise of peremptory challenges. *Id.* at 98.

¶22. Upon our independent review of the record, this Court concludes that Phillips assessment of the claim as "patently unsupportable" is accurate. The trial court asked the State to provide race neutral reasons for

three jurors the State attempted to exclude. The State challenged Brad Crockett on the basis of his association with known drug dealers and his friendship with Overstreet. The trial court agreed to exclude him. Thomas Payton was excused because the State pointed out that he and Overstreet were related by marriage. The State also challenged alternate juror Angie Marie Triplett, alleging her relationship with the defendant from school would unduly prejudice her ability to fairly hear the case. The trial court refused that strike, and Triplett became the alternate. Although the trial judge never detailed the exact racial make up of the jury for the record, at least two members of the jury were black and accepted by the State without a challenge. The alternate, Triplett, was also black. Overstreet's ***Batson*** challenge is meritless.

## CONCLUSION

¶23. Having considered the appeal as presented by Overstreet's counsel in light of ***Turner***, and having conducted an independent review of the record from trial, we can find no error on which to predicate reversal. Accordingly, the judgment of the trial court is affirmed.

¶24. **COUNT I: CONVICTION OF SALE OF LESS THAN ONE OUNCE OF MARIJUANA AND SENTENCE OF TWO YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF SALE OF COCAINE AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAY A FINE OF $5,000.00 AND ALL COSTS OF COURT, AFFIRMED. SENTENCE IN COUNT I SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT II.**

> **PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, MILLS, WALLER, COBB AND EASLEY, JJ., CONCUR.**

1. One gram is equivalent to .0353 ounces